# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMANDA RUSHING, ASHLEY SUPERNAULT, JULIE REMOLD, and TED POON on behalf of themselves, and as parents and guardians of their children, M.S., L.L., N.B., C.B., R.P., and K.P., and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>KOCHAVA, INC.<br><br>                    Defendant. | Case No. 2:21-cv-00322-BLW<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH KOCHAVA, INC.** |

This matter came before the Court for hearing on February 28, 2022, pursuant to the Court's Preliminary Approval Order dated November 19, 2021 (Dkt. 20). The Court has considered the Settlement Agreement (the "Settlement") between Plaintiffs Amanda Rushing, Ashley Supernault, Julie Remold, and Ted Poon ("Plaintiffs") and Kochava, Inc. ("Kochava" or "Defendant"), the record in the Lawsuit, and the arguments and authorities of counsel, including in any papers filed and proceedings had herein.  Good cause appearing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

1. Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement Agreement. *See* Dkt. 10-6, at Ex. Z.

2. This Court has jurisdiction over the subject matter of this Lawsuit pursuant to 28 U.S.C. § 1332, and has personal jurisdiction over the Parties and all Settlement Class Members. Venue is proper in this District.

3. By entering this Order, the Court does not make any finding of liability or wrongdoing as to Defendant.

4. The Court, for purposes of this Final Approval Order, (1) approves the Settlement described in Plaintiffs' preliminary and final approval papers; (2) enters this Order and a separate judgment pursuant to Federal Rule of Civil Procedure 54(b); and (3) adopts herein the terms and definitions set forth in the Settlement Agreement.

5. The Court finds that the notice to the Settlement Class, which consisted of, among other things, (i) the pendency of the Lawsuit and of the Settlement, including the terms thereof; (ii) the Class Representatives' applications for service awards; (iii) the procedure for objecting to the Settlement; (iv) contact information for Class Counsel and a toll-free number to ask questions about the Settlement; (v) important dates in the settlement approval process, including the date of the Fairness Hearing; and (vi) Class Counsel's request for an award of reasonable attorneys' fees and expenses, as detailed in Plaintiffs' preliminary

approval papers and as previously approved by this Court, has been implemented and fully complied with the requirements of Federal Rule of Civil Procedure 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class") and due process.

6. Notice was provided to Settlement Class Members in compliance with this Court's Preliminary Approval Order, paragraphs 4.1 and 4.2 of the Settlement Agreement, due process, and Rule 23 of the Federal Rules of Civil Procedure.

7. The notice given was the best method for providing such notice that was practicable under the circumstances. The notice: (i) fully and accurately informed Settlement Class Members about the lawsuit and settlement; (ii) provided sufficient information so that Settlement Class Members were able to decide whether to accept the benefits offered, opt-out and pursue their own remedies, or object to the proposed Settlement; (iii) provided procedures for Settlement Class Members to file written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed Settlement; and (iv) provided the time, date, and place of the final approval hearing.

8. There were no objections to the Settlement Agreement.

9. The Court finds that Defendant properly and timely notified the appropriate state and federal officials of the Settlement, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.

10. The Court approves the Settlement as fair, reasonable, and adequate and in the best interests of the Settlement Class Members. The Court specifically has considered the factors relevant to class settlement approval (*see, e.g., Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566 (9th Cir. 2004)), including, *inter alia*, the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of certifying the proposed Settlement Class and – if successful – maintaining class action status throughout trial; the relief provided for in the Settlement; the extent of discovery completed and stage of the proceedings; the experience and views of Class Counsel and highly-qualified mediators; and the reaction of Settlement Class Members to the proposed Settlement. Furthermore, the Court specifically has considered the factors relevant to class settlement approval set forth in Fed. R. Civ. P. 23(e), including whether:

    (A) the Class Representatives and Class Counsel have adequately represented the Settlement Class;

    (B) the Settlement was negotiated at arm's length;

    (C) the relief provided for the Settlement Class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

        (ii) the reasonableness of Rule 23(b)(2) notice of the Settlement to the Settlement Class Members;

    (iii) the terms of any proposed Class Representative service awards, including the timing of payment and any justification for the service awards; and

    (iv) any agreement required to be identified under Rule 23(e)(3);

  (D) the number of Class Members who objected to or commented on the Settlement; and

  (E) the Settlement treats Settlement Class Members equitably relative to each other.

  11. The Court has scrutinized the Settlement and negotiation history for any signs of potential collusion (*see, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)), and finds that the Settlement is not the product of collusion. For settlement purposes only, this finding is supported by, among other things: the fact that the Settlement was facilitated by experienced, well-qualified counsel from three different law firms; the Settlement provides substantial benefits to Settlement Class Members and such benefits are not disproportionate to the attorneys' fees and expenses sought separately by Class Counsel; the benefits provided to Settlement Class Members are appropriate under the circumstances of this Lawsuit; the Settlement builds on and is consistent with

the settlements in the *Disney* Action[1] in the U.S. District Court for the Northern District of California, particularly the settlement with Comscore, which was agreed to after serious, informed, arm's-length negotiations led by JAMS mediators Judge Gandhi (Ret.) and Lexi W. Myer, who conducted private mediation sessions totaling three days, with extensive follow-up negotiations over four months; and the Parties began negotiating attorneys' fees and expenses only after reaching an agreement regarding the key deal terms, including significant injunctive relief provisions which comprise the core benefit of the Settlement.

12. Kochava has agreed to meaningful injunctive relief to protect the privacy of children in the United States playing numerous child-directed games containing the Kochava SDK. The Settlement Agreement with Kochava, including all terms of the agreed-upon injunctive relief, are adopted herein. *See* Dkt. 10-6, at Ex. Z.

13. Injunctive Relief Pertaining to Client Notification:

  A. ENHANCEMENT NO. 1: Kochava will update external-facing documentation to include a section for Children & Children's Directed Content to describe the process for dashboard

---

[1] *See,* Dkt. No. 20 at fn. 1. *Rushing v. The Walt Disney Company,* Case No.: 3:17-cv-04419-JD (N.D. Cal.) is the "*Disney* Action," which together with *McDonald v. Kiloo A/S*, Case No. 3:17-cv-04344-JD (N.D. Cal.) and *Rushing v. Viacom, Inc.*, Case No.: 3:17-cv-04492-JD (N.D. Cal.) comprise the "Northern District Actions."

configuration (or any other applicable means of configuring the Kochava SDK) to attempt to ensure the applicable Device Identifiers are not included in the transmission of personal data to third parties ("postbacks"). Internal manuals will also include updates. Kochava will request affirmative confirmation of whether an application is child-directed. Customer service professionals will receive applicable training. Information about which applications are child-directed will be proactively supplemented by third party data sources as described below. Kochava will use proprietary methodology to create a list of child-directed applications, which will be monitored and updated periodically.

B. <u>ENHANCEMENT NO. 2</u>: In addition to proprietary methodology, Kochava will utilize third-party information to align application identification. Specifically, Kochava will work with a third-party application intelligence provider that reviews age-related signals from Google and Apple mobile application stores, and, based on information obtained from such third party, will cross-check whether apps are child-directed using the app's Bundle ID. The review will use platform developer guidance requirements to best identify child-directed applications. Review criteria will be

updated in accordance with industry developments. All applications identified in this category will be included in the list of child-directed applications.

C. <u>ENHANCEMENT NO. 3</u>: Kochava will create a client objection policy. Under this policy, a client will be required to provide explicit evidence, in the form of an attestation, that its application is not directed to children in order to remove the application from the list of child-directed applications.

14. <u>Injunctive Relief Pertaining to Data Use and Treatment for COPPA Settings</u>:

A. <u>ENHANCEMENT NO. 4</u>: In accordance with Enhancements Nos. 1-3, Kochava will automatically review applications against the list of child-directed applications and all device IDs will be removed from postbacks from all applications on the child-directed list.

B. <u>ENHANCEMENT NO. 5</u>: Kochava will review its list of applications against the list of child-directed applications. Where able, Kochava will send its clients notification that such client should either refer to the applicable client objection policy or should designate such application in its dashboard as child-directed. If the client does not respond to Kochava's notification within 60 days,

>Kochava will take reasonable efforts as set forth above to ensure device IDs are not included in applicable postbacks.

15. Within 270 days of execution of the Settlement Agreement, Defendants shall provide Plaintiffs with an affidavit certifying compliance with the enhancements outlined in Sections 3.1-3.2 of the Settlement Agreement and Paragraphs 13-14 above.

16. The injunctive relief set forth above shall be in place for a period of three years from the Effective Date, subject to any applicable change in the U.S. privacy data laws which renders the injunctive relief set forth above inapplicable.

17. The Parties are to bear their own costs, except as awarded by this Court in a separate judgment and Order on Attorneys' Fees made pursuant to Federal Rule of Civil Procedure 54(b), which implements the agreements between the Parties as to reasonable attorneys' fees and expenses.

18. The Parties and Settlement Class Members are bound by the terms and conditions of the Settlement. Upon the Effective Date of this Settlement, Plaintiffs and each and every Settlement Class Member shall be deed to have released, acquitted and forever discharged the Defendant, from any and all Released Claims.

19. Per the terms of the Settlement, as of the Effective Date, the Class Representatives and Settlement Class Members shall be deemed to have agreed not

to take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any of the Released Claims, directly or indirectly, against Defendant.

20. The Court hereby certifies, pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs' claims of (i) intrusion upon seclusion; and (ii) the California Constitutional Right to Privacy; (iii) New York General Business Law §349; (iv) California Business & Professions Code §§ 17200 et seq.; (v) Massachusetts General Laws ch. 93A et seq.; and (vi) Massachusetts General Laws ch. 214, § 1B; on behalf of a Settlement Class defined as follows:

> All parents and/or legal guardians of persons residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are younger than the age of 18, or were younger than the age of 18 when they played the Princess Palace Pets, Where's My Water? and Where's My Water? Free/Lite Disney Gaming Apps (the

"Apps").

21.     The Court finds, for settlement purposes only, that the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(a): (1) Numerosity: The Settlement Class readily satisfies the numerosity requirement, because the relevant apps have been downloaded millions of times in the United States alone during the relevant period[2]; (2) Commonality:  Plaintiffs readily meet this standard as the claims of the Settlement Class all arise from a common course of alleged conduct and common questions underlie all class members' claims, including whether Defendant collected and used children's personal data for commercial purposes with respect to the Apps, and whether the alleged conduct violates the common law of intrusion upon seclusion, the California Constitutional Right to Privacy, New York General Business Law §349, California Business & Professions Code §§ 17200 et seq., Massachusetts General Laws ch. 93A et seq., and Massachusetts General Laws ch. 214, § 1B; (3) Typicality:  the Class Representatives' claims are typical of those of the Settlement Class Members they seek to represent, as the Class Representatives' children played the Where's My

---

[2] On the Android platform alone, the Disney Gaming Apps exceeded well over one million installations. *See, e.g.*, *Where's My Water?*, Google Play, https://play.google.com/store/apps/details?id=com.disney.WMW (over 1 million); *Where's My Water? 2*, Google Play, https://play.google.com/store/apps/details?id=com.disney.wheresmywater2_goo (over 100 million).

ORDER                                             - 11 -

Water? and Where's My Water? Free/Lite Disney Gaming Apps, upon which Plaintiffs' claims are based; and (4) <u>Adequacy</u>:  the Settlement Class Representatives and Class Counsel have fairly and adequately protected the interests of the Settlement Class, and shall continue to do so.

22.     The Court finds that the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(b)(2), because the agreed-upon injunctive relief "is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  This is because the Settlement Agreement requires Defendant to make uniform changes that impact all members of the Settlement Class.

23.     The Court has reviewed the application for an award of service awards to the Settlement Class Representatives submitted by Class Counsel and the memoranda of law and other materials submitted regarding that application. The benefits described above are the only consideration the Defendant shall be obligated to give to the Settlement Class Members, with the exception of the service awards to be paid to the Class Representatives, which are supported by—among other things—evidence of the Class Representatives' active involvement in the Lawsuit.  Those service awards shall be paid by Kochava as follows within thirty days of the entry of this Order:

Ms. Amanda Rushing:  $1,000

Ms. Ashley Supernault:  $1,000

Ms. Julie Remold:  $1,000

Mr. Ted Poon: $1,000

24. Defendant has denied any liability, fault, or wrongdoing of any kind in connection with the allegations in this action, and as such, neither this Order, the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Defendant of the truth of any of Plaintiffs' allegations, or of any liability, fault, or wrongdoing of any kind.

25. If the Settlement Agreement terminates for any reason, this action will revert to its previous status in all respects as it existed before the Parties executed the Settlement Agreement. This Order will not waive or otherwise impact the Parties' rights or arguments.

26. The Settlement Agreement's provisions, and all related drafts, communications and documents shall not be deemed as or deemed to be evidence of an admission or concession by Defendant of any wrongdoing, by any Person or entity, and cannot be offered or received into evidence or requested in discovery in this Action or any other action or proceeding as evidence of an admission, concession, or presumption regarding such matters. However, the Settlement Agreement may be introduced as evidence of the Parties' respective obligations

under the Court's continuing jurisdiction over the injunctive relief set forth in the Settlement Agreement.

27. Without affecting the finality of this Order or the final judgment in any way, the Court reserves exclusive and continuing jurisdiction over the Lawsuit, the Class Representatives, the Settlement Class Members, and the Defendant for the purposes of supervising the implementation, enforcement, and construction of the Settlement and this Order.

IT IS SO ORDERED.

DATED: March 4, 2022

_____
B. Lynn Winmill
U.S. District Court Judge